UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| JOANN WARNER, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 10-100-ART |
| MINNESOTA LIFE INS. CO., et al., | ) **MEMORANDUM OPINION & ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

The plaintiff, Joann Warner, has not provided any evidence to suggest that a recalled pharmaceutical drug, Vioxx, was the sole cause of her husband's death. To be sure, she has had ample opportunity to do so. In fact, Mrs. Warner received two extensions in order to respond to Minnesota Life Insurance's and Ace American Insurance's motions for summary judgment. R. 33; R. 35. The Court granted the second extension to allow Mrs. Warner time to depose who she insisted was "a very important witness." R. 34-2 at 1. But at the end of the day, Mrs. Warner came up short. The witness's account contradicted Mrs. Warner's position. Because Mrs. Warner has not offered any evidence to support her claims, summary judgment for Minnesota Life and Ace American is granted.

## BACKGROUND

Mrs. Warner's husband, Richard Warner, held accidental death insurance policies with both Minnesota Life and Ace American. In October 2004, Mr. Warner suddenly collapsed and died. The Certificate of Death and Autopsy Report both list

1

the cause of death as "acute cardiac dysrhythmia sudden collapse" due to "occlusive atherosclerotic coronary artery disease." R. 30-2; R. 30-3 at 1. This finding was consistent with Mr. Warner's medical history—he suffered from hypertensive heart disease and had undergone quintuple bypass surgery in March 1999. R. 30 at 3.

Undeterred by these facts, Mrs. Warner filed suit in a class action against Merck, the manufacturer of Vioxx, claiming that long-term Vioxx treatment caused Mr. Warner's death. R. 42-2. Mr. Warner received his first prescription for Vioxx in August 2000 and his last in January 2004. R. 15-13 at 6, 10. Mrs. Warner eventually settled her claim. R. 31-5.

Shortly after the settlement, Mrs. Warner filed claims for benefits under her husband's insurance policies with Minnesota Life and Ace American. Her claims asserted that Mr. Warner's death was caused by an "accidental reaction" to Vioxx, thus meeting the terms of the respective policies. *Id*. at 2. Mrs. Warner included a letter written by Mr. Warner's doctor, Dr. Donald Cousineau, stating that he had suffered "an acute myocardial infarction while on Vioxx." R. 30-7.

Minnesota Life denied the claim on two grounds. First, it claimed Mr. Warner did not suffer an injury directly resulting from "an accident, independent of disease or bodily infirmity or any other cause" as required by the policy terms. R. 30-1 at 4. Rather, Mr. Warner's death "resulted from, or was contributed to by" heart disease. R. 30-8. Second, the policy excluded "loss, which is caused by . . . medical or surgical treatment." R. 30-1 at 5. Mr. Warner took Vioxx as treatment for osteoarthritis, which would invalidate the claim even if Vioxx did cause his death. An additional review by Minnesota Life's internal medical department noted that

(1) Mr. Warner had quintuple bypass surgery *before* he began taking Vioxx, (2) Vioxx increases the risk of heart attack because of increased clotting, (3) the autopsy did not find clotting, and (4) Vioxx was not known to cause an increased risk of cardiac dysrhythmia. R. 30-5 at 5. Based on these findings, the medical department agreed that the claim did not meet the terms of the policy.

Ace American denied the claim because Mr. Warner's death was not "the direct result of [an] injury and independent of all other causes" as required by the policy terms. R. 31-2 at 4. An independent medical review requested by Ace American concluded that Mr. Warner died of cardiac arrest caused by chronic congestive heart disease, not myocardial infarction due to Vioxx as Dr. Cousineau suggested. R. 31-9.

Mrs. Warner brought suit in state court for breach of contract and for bad faith in violation of the Kentucky Unfair Claim Settlement Practices Act. R. 1-1. Minnesota Life and Ace American timely removed the action on the basis of diversity jurisdiction. R. 1.

## DISCUSSION

**I. Sole Cause**

To survive summary judgment, Mrs. Warner must present sufficient evidence from which a reasonable jury could find in her favor on all of the elements necessary to her case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). She has failed to satisfy that burden.

Kentucky law governs this dispute and directs that insurance policies be "enforced as written." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82

3

S.W.3d 869, 873 (Ky. 2002). The terms of the policies are clear: Minnesota Life's policy states that, to be covered, an injury must be the "direct result of an accident, independent of disease or bodily infirmity or any other cause." R. 30-1 at 4. Ace American's policy states that a loss must be "the direct result of [an] injury [caused by an accident] and independent of all other causes." R. 31-2 at 4. This language is neither novel nor problematic. Kentucky courts interpreting similar clauses have held that insurance carriers are only liable if the accident was "the sole cause of the death." *Beams v. John Hancock Mut. Life Ins. Co.*, 325 F.2d 887, 888 (6th Cir. 1964); *see Commonwealth Life Ins. Co. v. Byck*, 268 S.W.2d 922, 923 (Ky. 1953); *Prudential Ins. Co. of Am. v. Lowe*, 230 S.W.2d 466, 467 (Ky. 1950); *Sachs v. Independence Ins. Co.*, 208 S.W.2d 61, 61 (Ky. 1948).

Viewed in the light most favorable to Mrs. Warner, the evidence presented at best indicates that the cause of Mr. Warner's death was a combination of Vioxx and heart disease. This is not sufficient to satisfy the policies' language. Mrs. Warner relies on three sources of "evidence" in support of her claims. First, she provides Mr. Warner's Vioxx prescriptions, R. 15-13, and details the recall of and subsequent litigation surrounding Vioxx. R. 42-1 at 2–3. She then asserts that an "obvious inference" exists. R. 47 at 2–3. But this logical leap is too long. Both the Certificate of Death and the Autopsy Report list Mr. Warner's cause of death as "acute cardiac dysrhythmia" caused by "coronary artery disease." R. 30-2; R. 30-3 at 1. This conclusion is consistent with Mr. Warner's medical history, which includes hypertensive heart disease and quintuple bypass surgery. R. 30 at 3. Given this evidence, Mrs. Warner is not asking for an inference based on the facts; she is simply

4

speculating as to the role Vioxx played in Mr. Warner's death. And, in a motion for summary judgment, evidence must be based "on more than mere speculation." *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (citation omitted).

Second, Mrs. Warner asserts that recent studies link Vioxx to cardiac dysrhythmias, R. 47 at 2, and cites to one published report. *Id.* at 7 (citing Jingjing Zhang et al., Adverse Effects of Cyclooxygenase 2 Inhibitors on Renal and Arrythmia Events, 296 J. Am. Med. Ass'n 1619 (2006)). Currently, Vioxx is "recognized to significantly increase risk of myocardial infarction," (i.e. heart attacks caused by clotting). *Id.* Minnesota Life's internal medical review also recognized this. R. 30-5 at 5. The report suggests that Vioxx "may increase the risk of arrhythmia" as well. Zhang et al., supra, at 1628. But even if true, the report also suggests that other health factors, including heart disease, influence the risk of dysrhythmia along with any potential Vioxx effect. *Id.* at 1620–22. The report does not offer a basis to conclude that Vioxx could have been the sole cause of Mr. Warner's death.

Finally, Mrs. Warner offers Dr. Cousineau as her medical expert. A letter from Dr. Cousineau dated September 19, 2008, asserted that Mr. Warner suffered "an acute myocardial infarction." R. 30-7. This finding contradicted the cause of death listed in the Certificate of Death and Autopsy Report, but it supported the theory that Vioxx could have been the sole cause of death. However, Dr. Cousineau followed this with a less confident letter dated June 24, 2010, where he stated that Vioxx "probably had a part" in Mr. Warner's death. R. 30-10. When deposed on May 18, 2011, Dr. Cousineau did not dispute the conclusions in the Certificate of Death and Autopsy Report. R. 50 at 14–15 (Dep. pgs. 28–29). Additionally, Dr. Cousineau

5

explicitly stated that Mr. Warner's heart disease contributed to his death, *Id.* at 15 (Dep. pg. 28–29), and could at most say that Vioxx was "a player." *Id.* at 16 (Dep. pg. 32).

With that, Mrs. Warner has not presented sufficient evidence to show that Mr. Warner's death meets the terms of the policies. No reasonable jury could conclude from the materials presented that Vioxx was the sole cause of Mr. Warner's death.

**II. Medical Exclusion**

As for Minnesota Life's policy, Mrs. Warner's claim is also precluded by the medical exclusion clause. The policy prohibits recovery "for a loss, which is caused by . . . medical or surgical treatment." R. 30-1 at 5. Dr. Cousineau stated that he prescribed Vioxx to Mr. Warner to treat chronic inflammatory conditions. R. 50 at 9. The Sixth Circuit addressed a similar exclusion for "loss directly or indirectly result[ing] from . . . medical or surgical treatment for . . . infirmity or disease." *Swisher-Sherman v. Provident Life & Accident Ins. Co.*, No. 93-3959, 1994 WL 562050, at *1 (6th Cir. Oct. 13, 1994). There the insured suffered a heart attack after a pharmacist provided the wrong prescription drug. *Id.* The court noted that it did not matter that the pharmacist was negligent, and not the doctor, because the focus of the exclusion was whether the injury occurred in the course of treatment. *Id.* It further reasoned that "such *medical* mishaps can only occur during the course of treatment; and that's all the exclusionary provision here cares about." *Id.* at *2. Similarly, because Mr. Warner took Vioxx as part of his medical treatment, the exclusion applies. It would not matter whether a doctor, pharmacist, or drug manufacturer was

6

negligent. The exclusion denies coverage for *any* injury incurred through medical treatment.

**III. Kentucky Unfair Claims Settlement Practices Act**

Finally, Mrs. Warner cannot maintain her bad faith action against Minnesota Life or Ace American. To show bad faith, a party must prove that the insurers (1) had an obligation to pay, (2) lacked a reasonable basis to deny benefits, and (3) either knew that there was no reasonable basis or acted in reckless disregard as to whether a reasonable basis existed. *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000). Mrs. Warner's claim meets none of these.

Most obviously, the bad faith claim fails because Mrs. Warner cannot show that Minnesota Life or Ace American were liable for any benefits. *See id.* ("[A]bsent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute."). Without support that either insurer should have paid benefits, Mrs. Warner cannot claim that either acted in bad faith by withholding those benefits.

Mrs. Warner also fails to show that Minnesota Life or Ace American lacked a reasonable basis to deny her claims. Both insurers relied on the Certificate of Death and Autopsy Report. The medical history and cause of death in these documents provide a reasonable basis for the denial of benefits. Additionally, both defendants consulted with a medical team that reviewed the documents and came to the same conclusion. Though he initially disagreed, Dr. Cousineau could not dispute the cause of death listed in the documents. The reliability of this information and confirmation

from an independent medical review demonstrates that Minnesota Life and Ace American had a reasonable basis for their decisions.

Nor does Mrs. Warner provide evidence of knowledge or recklessness. This element, more than any other, demonstrates the high standard of proof in a bad faith cause of action. When it created the tort, the Kentucky Supreme Court cautioned that courts should find liability only "where such is clearly warranted" and that "claim[s] should not be lightly entertained." *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989). Mrs. Warner offers nothing to suggest that either insurer had an "evil motive." *See Witmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Rather, the evidence suggests that both used reasonable means to investigate Mrs. Warner's claims.

## CONCLUSION

Accordingly, it is **ORDERED** that the motions for summary judgment, R. 29; R. 31, are **GRANTED**.

This the 18th day of July, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge